1  **WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Hunton, an individual, | No. CV-16-00539-PHX-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| American Zurich Insurance Company, d/b/a Zurich American Insurance Company, | |
| Defendant. | |

Following an in camera review of certain documents in April 2017, the Court found that the documents properly were subject to the attorney-client privilege and therefore denied Plaintiff's motion to compel. (Docs. 162, 180.) Plaintiff has moved for reconsideration of that order, and Defendant has filed a response in opposition. (Docs. 199, 202). For reasons stated below, the motion is granted.

Plaintiff contends that the recent deposition of Defendant's bad faith expert shows that Defendant is not merely defending this case based on the purely objective reasonableness of its conduct, but instead asserts that its actions in investigating, evaluating, and paying Plaintiff's claim were subjectively reasonable and taken in good faith. (Doc. 199 at 2-4.) Plaintiff argues that Defendant has impliedly waived the attorney-client privilege because Defendant has placed the claims adjuster's subjective beliefs at issue and those beliefs were informed in part by the advice of counsel. The Court agrees.

## I. Legal Standard

The attorney-client privilege exists "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981). The law is clear that a party does not waive the attorney-client privilege by conferring with counsel and obtaining advice, by simply following the advice in taking action, or by relying on the advice to evaluate its claims and defenses. *State Farm Mut. Auto. Ins. Co. v. Lee*, 13 P.3d 1169, 1183 (Ariz. 2000). Nor is the privileged waived by "the mere filing of a bad faith action, the denial of bad faith, or the affirmative claim of good faith[.]" *Id.* at 1179.

A party cannot, however, "assert a defense based on the contention that it acted reasonably because of what it did to educate itself about the law, when its investigation of and knowledge about the law included information it obtained from its lawyer, and then use the privilege to preclude the other party from ascertaining what it actually learned and knew." *Id.* at 1177. Similarly, "when an insurer raises a defense based on factual assertions that, either explicitly or implicitly, incorporates the advice or judgment of its counsel, it cannot deny an opposing party the opportunity to discover the foundation for those assertions in order to contest them." *Mendoza v. McDonald's Corp.*, 213 P.3d 288, 302 (Ariz. Ct. App. 2009) (citing *Lee*, 13 P.3d at 1178). In short, an insurer "is not allowed to assert the privilege when doing so 'places the claimant in such position, with reference to the evidence, that it would be unfair and inconsistent to permit the retention of the privilege' because the attorney-client privilege 'is not to be both a shield and a sword.'" *Id.* at 304 (quoting *Lee*, 13 P.3d at 1173).

## II. Discussion

In this case, Defendant sent Plaintiff to Dr. Zoran Maric for an independent medical examination (IME) in November 2014. The IME report was favorable to Plaintiff in that Dr. Maric, in responding to specific questions posed by Defendant, opined that based on objective medical evidence Plaintiff's injury was the "direct result of

his work activity" on the day in question and there is no "evidence that this was a pre-existing condition." (Doc. 199-2 at 5-6.) Defendant's expert witness, Doug McCoy – who ultimately opines that there was no bad faith in this case – acknowledged at his deposition that the IME report was favorable to Plaintiff, that Defendant apparently had no basis to dispute Dr. Maric's medical findings, and that Defendant should not have waited several months to accept the claim after receiving the IME report absent a good reason. (Doc. 199-3 at 8, 17.)

Significantly, however, McCoy did not know why the claims adjuster, Lynell Brown, denied the claim after receiving the IME report on November 5, 2014 only to approve the claim several months later on March 25, 2015. He speculated that it was based on "a series of emails the exact same date between her and counsel," but did not know what was said in the emails because they were redacted based on the attorney-client privilege. (Doc. 199-1 at 7.) He confirmed that although he did not know the reason why Brown ultimately approved the claim, he "suspect[ed] it was a discussion she had with counsel the day she accepted it." (*Id.* at 9.)

In support of his no bad faith opinion, McCoy testified that, despite the IME report, Brown apparently "still had doubts" and "additional questions" about the specific cause of the injury and that after the retention of counsel, who "is an arm of investigation" into the claim, evidently "there were things that were done" causing Brown to decide that the claim was compensable. (*Id.* at 11, 13-15, 19-20.) Again, however, McCoy could not identify what "things" were done or why Brown's "doubts" and "additional questions" were answered because the emails between her and counsel were redacted. (*Id.* at 15-16.)

Defendant, through the testimony and opinion of its bad faith expert, has put the subjective beliefs of the claims adjuster directly at issue, and those beliefs implicate the advice she received from Defendant's ICA counsel, Scott Finical. Indeed, Brown's motives and the advice of counsel appear to be so intertwined that McCoy could not explain what further questions Brown had, what steps she took to get them answered, or

what caused her to change her position and ultimately approve the claim; rather, McCoy could only speculate that those explanations lay within Brown's redacted communications with ICA counsel.

By electing to defend this case based on the subjective, not just objective, reasonableness of its adjuster's actions, Defendant placed at issue its "subjective beliefs and directly implicated the advice and judgment [it] had received from [Defendant's] ICA counsel incorporated in those actions." *Mendoza*, 213 P.3d at 303. Defendant has thus "rendered the advice and judgment its adjuster received from its ICA counsel relevant to the case." *Id.* In asserting the attorney-client privilege over the relevant communications between Brown and ICA counsel, Defendant has sought to shield Plaintiff from the very evidence he would need to challenge both Brown's subjective beliefs themselves and McCoy's expert opinion that there was no bad faith because Brown apparently got her additional questions answered through the advice of counsel. *See id.* at 304. It would be "unfair and inconsistent to permit the retention of the privilege" in this situation because the privilege "is not to be both a shield and a sword." *Id.* at 304 (quoting *Lee*, 13 P.3d at 1173).

In summary, the Court finds that Defendant has impliedly waived the attorney-client privilege with respect to any communications between Brown and ICA counsel relating to the coverage determination and the ultimate decision to approve Plaintiff's claim. *See id.*; *Cosgrove v. Nat'l Fire & Marine Ins. Co.*, No. 2:14-cv-2229-HRH, 2016 WL 4578139, at *5 (D. Ariz. Sept. 2, 2016) ("Because defendant has raised a defense that is highly likely to have incorporated the advice or judgment of its coverage counsel, defendant cannot shield its communications with [counsel]. It would be unfair not to give plaintiff an opportunity to discover what advice [the claims adjuster] might have received from coverage counsel."); *Miller v. York Risk Servs. Grp.*, No. 2:13-cv-1419 JWS, 2014 WL 4354833, at *2 (D. Ariz. Sept. 3, 2014) ("It is impossible to test the accuracy of York's assertion that the adjusters acted reasonably . . . if a significant factor forming a basis for their decisions – the communications with the claims lawyers – is

cloaked in secrecy.").

Defendant asserts that, unlike the facts in *Mendoza*, Defendant's reliance on counsel's advice did not force Plaintiff through "needless adversarial hoops" to secure his benefits. (Doc. 202 at 5.) But even if this were true, it does not preclude application of *Mendoza* in this case. Indeed, according to McCoy's testimony, it appears that counsel's advice in March 2015 may have been the basis for the ultimate approval of the claim – but only after a several month delay that Plaintiff claims to be unreasonable and in bad faith. Defendant notes that Brown accepted Plaintiff's claim "based on her conclusion in March 2015 that it was more probable that his injury was related to his employment[.]" *Id.* The question, however, is the basis for this conclusion, which Defendant seeks to cloak in secrecy under the attorney-client privilege.

"The linchpin in *Lee* and *Mendoza* is that defendant's subjective good faith in denying the claims is at issue. . . . [T]he analytical principle behind *Lee* and *Mendoza* is not how the defendant's good faith becomes an issue, but the fact that it is an issue." *Miller*, 2014 WL 4354833, at *2. The Court, in the exercise of its discretion, finds that Defendant has impliedly waived the attorney-client privilege as set forth above. *See Lee*, 13 P.3d at 1174 ("In discovery matters, including rulings on assertion of the privilege, the trial judge has broad discretion that we review only for abuse.").

**IT IS ORDERED** that Plaintiff's motion for reconsideration (Doc. 199) is **GRANTED**. Defendant shall, within seven (7) days from the date of this order, produce all communications between Brown and ICA counsel relating to the coverage determination and ultimate decision to approve Plaintiff's claim.

Dated this 29th day of August, 2017.

Douglas L. Rayes
United States District Judge