Steven C. Dawson, Bar No. 006674
Anita Rosenthal, Bar No. 006199
Sander Dawson, Bar No. 032243
DAWSON & ROSENTHAL, P.C.
25 Schnebly Hill Road
Sedona, Arizona   86336-4233
Telephone: (928) 282-3111
dandr@dawsonandrosenthal.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| BRYAN HUNTON, an individual,<br>    Plaintiff,<br>    v.<br>AMERICAN ZURICH INSURANCE COMPANY, dba ZURICH AMERICAN INSURANCE COMPANY,<br>    Defendant. | **CASE NO:  CV-16-539-PHX-DLR**<br><br>**PLAINTIFF'S TRIAL BRIEF RE: CONTESTED ISSUES OF LAW** |

Pursuant to the Court's Order, Plaintiff submits the following summary of legal and evidentiary issues that may arise at trial. These include: (1) whether evidence of similar bad faith claims handling practices by Defendant Zurich is relevant and admissible to support Hunton's claims for bad faith and punitive damages; (2) what constitutes a compensable claim under Arizona's Workers' Compensation Act; (3) whether any duty owed by Zurich to Sundt Companies, Inc.—Zurich's insured and Hunton's employer—is relevant to the jury's determination of whether Zurich breached the duty of good faith and fair dealing it owed to Plaintiff; and (4) what evidence and arguments are admissible on the issues of (A) the compensability of Plaintiff's workplace injury on September 18, 2014, and (B) whether or not he was medically stationary as of April 4, 2016.

## I. DEFENDANT'S SIMILAR BAD FAITH CONDUCT IS RELEVANT & ADMISSIBLE.

### a. Summary

Evidence that an insurance company has engaged in a pattern of similar improper practices is relevant and admissible to support claims for bad faith and punitive damages. In this case, Plaintiff intends to prove Zurich breached its duty of good faith to Bryan Hunton by denying his claim without a basis, delaying its acceptance of the claim without a basis, and stopping his benefits without a basis, and engaging in various other improper claims handling activities. In addition, Plaintiff will prove this claims handling was the result of established company policy designed to elevate Zurich's financial interests by placing customer retention at the center of its claims operation, where the interests of the customer (i.e., the employer/insured) and the injured claimant often conflict.

Zurich—and the specific adjuster who denied Hunton's claim, Lynell Brown—has engaged in similar bad faith practices as evidenced by the cases of *Hernandez v. Zurich & Lynell Brown*; *Perry v. Zurich & Lynell Brown*; and *Mason v. Zurich*."[1] These cases involve some of the same conduct as the bad faith claims handling in this case. Some of them also involve the same adjuster (Lynell Brown) and the same insured (Sundt).

In *Perry*, for example, Sundt urged Brown to deny Perry's claim on the grounds that he had a preexisting injury, and Brown refused to accept the claim until it was eventually statutorily accepted. Brown failed to pay Perry his benefits, however, and the ICA issued three separate opinions sanctioning Zurich for multiple findings of bad faith claims handling. The claims handling in Perry that prompted those findings, and the resulting penalties from the ICA, closely resemble some of Zurich's conduct in this case, including delaying surgery, failing to timely pay benefits, and unreasonably terminating benefits.

---

[1] The facts and arguments relative to this contested issue can be found in Defendant's Motion in Limine (MIL) Re Prior Claims and Plaintiff's response thereto which is incorporated as though fully stated herein. A more in depth recitation of the facts can be found in the response, but some of the more salient points will be repeated here.

### b. Analysis

Plaintiff's burdens of proof on his claims for bad faith and punitive damages include elements concerning Zurich's state of mind. *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 498, 733 P.2d 1073, 1081 (1987). Meeting these burdens requires evidence regarding Zurich's knowledge and intent, and proof that its conduct was conscious, intentional, or malicious rather than a product of mistake or incompetence. *See Borland v. Safeco Ins. Co. of Am.*, 709 P.2d 552, 558 (Ct. App. 1985). Evidence of "previous, similar acts" or "a pattern of similar unfair practices" can support these findings. *Hawkins*, 733 P.2d at 1081.

Thus, evidence that Zurich engaged in similar bad-faith claims handling on other claims is relevant and admissible on Plaintiff's claims for bad faith and punitive damages. Indeed, this evidence directly supports the fact-specific theories of Plaintiff's case. Namely, that Zurich (1) improperly pressures adjusters to bend to the whims of Zurich customers in the name of "customer-centricity," (2) inappropriately permits customers such as Sundt, to influence claims decisions, and (3) that the bad faith conduct in this case was rooted in these "established company polic[ies]." *Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1013 (9th Cir. 2004).

Prior conduct is also relevant to determining the appropriate amount of punitive damages commensurate with the reprehensibility of the misconduct, as shown by its duration and "the degree of defendant's awareness of the harm or risk of harm." *Hawkins*, 733 P.2d at 1080.; *see also BMW of N America v. Gore*, 517 U.S. 559, 576-577 (1996) ("Our holdings that a recidivist may be punished more severely than a first offender recognize that repeated misconduct is more reprehensible than an individual instance of malfeasance." (internal citations omitted)). Zurich's "customer-centric" business model and the influence it gave Sundt to exert over the handling of Hunton's claim are central issues in this case. Zurich's prior similar conduct—including the ICA's findings of bad faith in *Perry* and Zurich's indifference to them—demonstrate that Zurich's conduct here was not isolated, inadvertent, unexpected, or "an individual instance of malfeasance." *Gore*, 517 U.S. at 577.

2

## II. THE ABSENCE OF A SPECIFIC, INJURY-INDUCING ACT IS NOT A VALID BASIS TO DENY A WORKERS' COMPENSATION CLAIM.

The general rule of medical causation is that any industrial contribution suffices for compensability. *Skyview Cooling Company v. Indus. Comm'n.*, 691 P.2d 320, 324 (Ct. App. 1984). To be compensable under Arizona's Workers' Compensation Act, an injury must be accidental and arise out of and in the course of employment. Ariz. Const. art. XVIII § 8; A.R.S. § 23-1021; *Reilly v. Indus. Comm'n*, 398 P.2d 920, 923 (Ct. App. 1965). The "arising out of" element refers to an injury "caused in whole or in part, or contributed by a necessary risk or danger of the employment, or inherent in its nature. *Circle K Store No. 1311 v. Indus. Comm'n.*, 796 P.2d 893, 896 (Ct. App. 1990). An injury occurs in the course of employment if it happens when an employee is doing what a person so employed may reasonably do within hours and at a place where he may reasonably be during that time. *Royall v. Indus. Comm'n*, 106 Ariz. 346, 349 (1970).

Zurich adjuster Lynell Brown denied Hunton's claim based on (1) Hunton's pre-existing injury and (2) his inability to pinpoint a "specific" act, moment, or "incident" that caused his injury. Although even Lynell Brown conceded that this is an incorrect statement of the law, Zurich continues to assert that a "specific incident" is necessary for a claim to be compensable. Based on its previous arguments and proposed jury instructions, it appears Zurich intends to pound a square peg into a round hole by arguing the term "accident," as used in the Workers' Compensation Statute, means "specific incident" rather than "accidental." This is a clear misstatement of law.

"[T]he law in Arizona is that when a condition has developed, not instantaneously, but gradually, over a period of time, resulting in a definite though unexpected injury or disease, . . . [it] is the result of an 'accident' within the terms of our Workmen's Compensation Act, and is compensable." *Reilly*, 398 P.2d at 923. An injury is accidental if either the external cause or the resulting injury itself was unexpected or accidental. *Div. of Vocational Rehab. v. Indus. Comm'n of Arizona*, 125 Ariz. 585, 588 (Ct. App. 1980). Pre-existing conditions that are aggravated by one's employment, even if the aggravation happens slowly over a long period, are considered

"accidents" and compensable within the meaning of the worker's compensation statute. *Martinez v. Indus. Comm'n of Arizona*, 192 Ariz. 176, 181 (1998); *Samaritan Health Services v. Industrial Com'n of Arizona*, 170 Ariz. 287, 290 (Ct. App. 1991). There is no requirement that the injury be sudden or acute. *Reilly v. Indus. Comm'n*, 1 Ariz. App. 12, 398 P.2d 920 (1965), *Employers' Mut. Liability Ins. Co. of Wisconsin v. Indus. Comm'n.*, 24 Ariz. App. 427, 539 P.2d 541 (1975).

In short, the law does not require a specific incident in order for a claim to be compensable. If Defendant wishes to argue that the adjuster, Ms. Brown, mistakenly but reasonably applied the wrong legal standard when denying Plaintff's claim, it is entitled to do so. But Defendant should not be permitted to confuse the issue by arguing that the denial was reasonable because of the lack of a specific incident.

## III. ANY DUTY ZURICH MAY OWE ITS INSURED, SUNDT, IS NOT RELEVANT TO WHETHER ZURICH BREACHED ITS DUTY TO PLAINTIFF.

Zurich seems insistent on suggesting that its good faith obligations owed to Mr. Hunton are somehow impacted or circumscribed by the fact that Hunton's employer is the named insured on the workman's compensation policy. It does this by conflating the duty of good faith and fair dealing owed to each. The overarching allegation of bad faith conduct in this case is that Zurich essentially conspired with its insured, Sundt, to deprive Hunton of insurance benefits he was entitled to.  And further, that this was consistent with the business model Zurich has put in place. Zurich's large employer customers, like Sundt, have a significant financial stake in the decisions made on the workers' compensation claims of their employees. And Zurich has a significant financial stake in gaining and retaining these large employers as customers. Duties Zurich may have owed to Sundt are not relevant to any issue involved in this case and, in any event, are not analogous to the fiduciary like duties owed to Hunton. Any duty owed to Sundt is of no more consequence than any legal duties Zurich may owe to its shareholders. As a matter of law, Zurich may not defend the bad faith conduct perpetrated on Hunton by pointing to duties owed to other entities.

### a. Relevant Facts

Hunton has accused Zurich of, among other things, placing "its financial interests before the interest of Plaintiff by permitting Sundt to have undue influence on claim decisions." (Joint Pretrial Order at 11:12). Zurich has and continues to defend against this allegation and others by, in part, arguing that it "owes a duty of good faith and fair dealing not only to the Plaintiff, but his employer, Sundt, as the policyholder." (Joint Pretrial Order at 11:27).

### b. Analysis

In Arizona, a workers' compensation carrier owes a duty of good faith directly to the injured worker whose claim it is handling. *Twin City Fire Ins. Co. v. Leija*, 243 Ariz. 175, 403 P.3d 587, 594 (Ct. App. 2017), as amended (Nov. 8, 2017); *Mendoza v. McDonald's Corp.*, 222 Ariz. 139, 149, 213 P.3d 288, 298 (Ct. App. 2009). And though the law imposes a duty of good faith on all parties to all contracts, the insured's duties to an injured worker are fiduciary in nature and unique for that important reason. These fiduciary like obligations are imposed on the insurer, and only the insurer, reflecting its "special relationship" with the claimant, characterized by the disparity in bargaining power between the parties and the nature of the contract (entered into not for financial gain but for peace of mind). *Rawlings v. Apodaca*, 151 Ariz. 149, 154, 726 P.2d 565, 570 (1986) (noting the control an insurer exercises: "In both first- and third-party situations the contract and the nature of the relationship effectively give the insurer an almost adjudicatory responsibility.") As such, claims by injured workers against the workers compensation carrier are treated just like regular first-party claims, and the insurer may not try and minimize its responsibilities to the worker by referencing its obligations to Sundt. *Cano v. Zurich Am. Ins. Co.*, No. CV-05-0511-PHX-SRB, 2006 WL 1791305, at *3 (D. Ariz. June 27, 2006); *Franks v. U.S. Fid. & Guar. Co.*, 149 Ariz. 291, 295, 718 P.2d 193, 197 (Ct. App. 1985).

Unlike his employer, an injured worker does not even have the power to threaten economic loss to the insurer, which Sundt can do by simply threatening to utilize a different insurer. As such, the level of care Zurich owes to Hunton is not analogous to the duties it owes to (or is owed by) any other party. *Kransco v. Am. Empire Surplus Lines Ins. Co.*, 23 Cal. 4th 390, 400, 2

P.3d 1, 8 (2000), as modified (July 26, 2000) ("The availability of tort remedies in the limited context of an *insurer's* breach of the covenant advances the social policy of safeguarding an insured in an inferior bargaining position who contracts for calamity protection, not commercial advantage." (emphasis in original).)

Statutory and case law have evolved to articulate specific insurer practices that violate the insurer's duty of good faith. For example, under ICA rule AAC R20-5-163, it is bad faith for an insurance carrier to "interpose a defense that is not . . . well-grounded in fact;" unreasonably delay the payment of benefits or authorization for medical benefits or treatment; unreasonably terminate benefits; unreasonably issue a notice of claim status without adequate supporting information. Similarly, an insurer may not force a worker "through needless adversarial hoops to achieve her workers' compensation benefits" (*Mendoza v. McDonald's Corp.*, 213 P.3d at 303 (Ct. App. 2009) (internal quotations omitted)), deny or delay payment without an adequate investigation (*Rawlings v. Apodaca*, 726 P.2d at 572 (1986)), or conduct an outcome driven investigation (*Ortiz v. Zurich Am. Ins. Co.*, No. CV-13-02097-PHX-JAT, 2014 WL 1410433, at *1 (D. Ariz. Apr. 11, 2014)).

The above are examples of bad faith conduct of which Zurich stands accused in this case. The question for the jury is whether or not Zurich knowingly took these actions. That Zurich may have felt conflicting or parallel obligations to Sundt, or that Zurich may have been an exemplary insurer to Sundt, bear no relevance whatsoever on the question of whether or not Zurich is guilty of the alleged conduct.

### IV. IT IS UNDISPUTED & RES JUDICATA THAT HUNTON'S CLAIM WAS COMPENSABLE & THAT HE WAS NOT MEDICALLY STATIONARY AS OF MARCH 2017; EVIDENCE OR ARGUMENT SUGGESTING OTHERWISE IS INADMISSIBLE.

On March 25, 2015, Zurich filed a NCS with the ICA accepting Hunton's claim and reversing its initial denial. Zurich's March 25 NCS—consistent with later deposition testimony in this case from Zurich's claims personnel—concluded that Hunton suffered an industrial accident in September of 2014 and his claim was compensable. Just over a year later, Zurich declared Hunton medically stationary and stopped paying benefits. That decision was also

reversed—this time by the ICA which, on March 30, 2017, concluded Hunton was not medically stationary and was entitled to "medical, surgical and hospital benefits [and temporary total or temporary partial disability benefits], as provided by law, from September 18, 2014 until such time as the condition is determined to be medically stationary."

Although there are numerous disputed facts listed in the parties' Proposed Final Pretrial Order, it is undisputed that Hunton's claim was compensable and that he had not reached maximum medical improvement ("MMI") by March 2017. In addition, the parties have stipulated that "Defendant will not dispute any of the findings made by the [ICA] in its March 30, 2017 Decision Upon Hearing And Findings And Award for Continuing Benefits for Bryan Hunton's workers' compensation claim." (Stipulations Re: Agreed upon Motions in Limine, Doc. 263, at 1:12).

In addition to being undisputed, these issues are res judicata. A Notice of Claim Status ("NCS") becomes res judicata after 90 days (unless it is contested or revoked) and a carrier is bound by the conclusions therein.[2] A.R.S. §23-947; *Church of Jesus Christ of Latter Day Saints v. Indus. Comm'n*, 150 Ariz. 495, 724 P.2d 581 (App. 1986). Similarly, "findings by the ICA constitute res judicata and can be used to preclude parties from re-litigating issues." *Hernandez v. Gemini Hospice LLC*, No. CV-16-01486-PHX-GMS, 2017 WL 1318036, at *3 (D. Ariz. Apr. 10, 2017); *accord Mendoza v. McDonalds Corporation,* 213 P.3d 288, 306 (Ct. App. 2009) (reversing and holding lower court erred in overruling "the objections raised by Mendoza" to the introduction of evidence that Mendoza's claim was not compensable, and that "the superior court was required to accord preclusive effect to the compensability determinations made by the . . . ICA").

Accordingly, Zurich should be precluded from presenting evidence or argument designed to cast doubt on these facts. That is not to suggest that Zurich cannot argue it had a reasonable basis for denying the claim and later stopping benefits, despite those decisions being reversed.

---

[2] Zurich's NCS accepting the claim and concluding it was compensable became res judicata on June 23, 2015.

Indeed, whether Zurich had a reasonable basis for these decisions, or knew it had none, are the central issues the jury will be deciding.

But suggesting these claims decisions were not only reasonable, but *correct*, would be improper. Given the finality attaching to Zurich's March 25, 2015 acceptance of Hunton's claim and the ICA's March 2017 decision, these facts are no longer subject to dispute. Moreover, they are not even genuinely in dispute. Allowing Zurich to raise the specter of a dispute where none exists would only serve to confuse the issues, waste time, and unfairly prejudice Plaintiff. It should be precluded from doing so.

DATED this 16th day of March, 2018.

DAWSON & ROSENTHAL, PC

*/s/ Sander R. Dawson*
Steven C. Dawson
Anita Rosenthal
Sander R. Dawson
25 Schnebly Hill Road
Sedona, Arizona 86336

*Attorneys for Plaintiff*

8

**CERTIFICATE OF SERVICE**

I certify that on March 16, 2018, I electronically transmitted the foregoing to the Clerk's office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants in this action.

*/s/ Steven P. Schubert*
Steven P. Schubert