Steven G. Mesaros, #009215
William W. Drury, #005238
John A. Klecan, #019159
Kelly A. Hedberg, #024934
**RENAUD COOK DRURY MESAROS, PA**
One North Central, Suite 900
Phoenix, Arizona 85004-4417
Telephone: (602) 307-9900
Facsimile:  (602) 307-5853
E-mail:   docket@rcdmlaw.com
             smesaros@rcdmlaw.com
             wdrury@rcdmlaw.com
             jklecan@rcdmlaw.com
             khedberg@rcdmlaw.com

*Attorneys for Defendant American Zurich Insurance Company*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bryan Hunton, an individual,<br><br>　　　　　　Plaintiff,<br><br>  v.<br><br>American Zurich Insurance Company, dba Zurich American Insurance Company,<br><br>　　　　　　Defendant. | No. 2:16-cv-00539-PHX-DLR<br><br>**DEFENDANT'S RESPONSE RE ONLINE RESEARCH OF PROSPECTIVE JURORS**<br><br>*(Assigned to the Honorable Douglas L. Rayes)* |

Since this is an area that is unresolved, the Court has three choices (1) forbid the parties from conducting social media searches of potential jurors; (2) impose strict guidelines in the event the parties want to conduct social media searches; or (3) order the parties share in the costs and fruits of the social media search.

The reason to exclude the use of social media searches of prospective jurors is the potential 'chilling effect'[1] these searches can have on citizens' willingness to

---

[1] John G. Browning, *Voir Dire Becomes Voir Google: Ethical Concerns of 21st Century Jury Selection*, 45 the brief 40, 43 (2016) (reporting on published account of a Maryland state court trial judge prohibiting Internet and social media searches during

(Page 1, CV-16-00539-PHX-DLR)            [2313-0066]

3648871.v1

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

serve. Joseph C. Crawford, *Internet and Social Media Searches About Potential and Actual Jurors During Voir Dire and Trial: Ethical and Trial Advocacy Issues*, (hereinafter "the Article") Although approximately 80% of the one hundred people polled in the Article expected social media searches to be performed, 20% were "surprised by the practice and disapproved of it. (pg. 11, ¶1) When those polled were told the types of information that the searches would include ("criminal history, legal problems, bankruptcy … opinions about social issues") only 38% of the group approved of the searches and 27% disapproved. (*Id.* ¶2) "Sixty-two percent (62%) of the respondents to the survey felt that it would be appropriate to question prospective jurors about this kind of information only if the questioning was conducted outside the presence of the other jurors." (*Id.* ¶3)

Further, by allowing social media searches, it allows a party to obtain information about a potential juror that would otherwise be prohibited through voir dire questioning.  For example, social media search results may contain information concerning a person's political views or religious beliefs. "Where an adversary wishes to exclude a juror because of bias, …it is the adversary seeking exclusion who must demonstrate, ***through questioning***, that the potential juror lacks impartiality." *Wainwright v. Witt*, 469 U.S. 412, 423 (1985). [emphasis added].  Of course, in the event that the social media search results contradict a potential juror's response to voir dire or result in the discovery of an otherwise undisclosed bias, the parties will not be able to question the prospective juror outside the presence of the other jurors with the time constraints set forth here. The results of social media searches may result in an overly complicated voir dire process.

A modified secondary approach to an outright ban on social media searches would be to fully disclose the scope of the parties' intent to conduct searches and

---

voir dire because of the possibility that such searches might have a chilling effect on citizens' willingness to serve on juries).

(Page 2, CV-16-00539-PHX-DLR)          [2313-0066]

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ  85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

3648871.v1

1   allow for the prospective jury pool to adjust their privacy setting accordingly.[2] Oracle
2   Am., Inc. v. Google Inc., 172 F. Supp. 3d 1100, 1102 (N.D. Cal. 2016). Although
3   *Oracle Am., Inc.* was high profile case that elicited millions of Internet searches, the
4   Court's first concern is relevant here. In the event the prospective jurors learn of social
5   media searches being conducted by the lawyers or their consultants in this matter, it
6   could cause them to stray from this Court's admonition to refrain from conducting
7   Internet searches on the lawyers, individuals, doctors, or companies in this case.
8   Allowing for these searches could have a "corrosive effect on fidelity to the no-
9   research admonition." *Id.*

10   A second concern raised in *Oracle Am. Inc.* was the propensity for counsel to
11   play on particular jurors preferences. "Jury arguments may, of course, employ
12   analogies and quotations, but it would be out of bounds to play up to a juror through
13   such a calculated personal appeal, all the more so since the judge, having no access to
14   the dossiers, couldn't see what was really in play." *Id.* at 1003; *citing United States v.*
15   *Nobari*, 574 F.3d 1065, 1077 (9th Cir.2009).

16   Finally, although this information is readily available in the public domain, the
17   Court considered that the prospective jury pool were not celebrities or public figures,
18   "not a fantasy team composed by consultants, but good citizens commuting from all
19   over our district, willing to serve our country, and willing to bear the burden of
20   deciding a commercial dispute the parties themselves cannot resolve." *Oracle Am.*
21   *Inc.*, 172 F. Supp. 3d ay 1103. The Court concluded "their privacy matters. Their
22   privacy should yield only as necessary to reveal bias or a reluctance to follow the
23   Court's instructions." *Id.*

24   Reluctantly, in *Oracle Am. Inc.*, social media searches were authorized, but
25   with much restriction, including each side informing the prospective juror pool of its

---

[2] This may prove problematic from a timing standpoint, as some individuals may not be conversant in how to adjust their settings during the applicable time period, but wish to limit what can be learned about them through such searches.

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

(Page 3, CV-16-00539-PHX-DLR)          [2313-0066]

3648871.v1

1  intent to proceed with such searches and their scope and allowing for the prospective
2  jurors to adjust their privacy settings accordingly. *Id.* The Court concluded with the
3  following: "The Court would much prefer to fully protect the privacy of all venire
4  persons from Internet searches and only reluctantly allows the foregoing." *Id.* at 1105.

5  As a final method, Defendant agrees that if the Court allows the use of social
6  media searches for prospective jurors, it will share the cost of those efforts. This
7  would resolve this Court's primary inquiry as to "fairness as to both sides having the
8  same information about jurors." (Pg. 9, lines 2-4) Defendant agrees to the use of the
9  vendor Plaintiff has "hired"[3] with the agreement that all counsel be copied on all
10 communications exchanging information related to any social media searches
11 conducted during the course of trial. In exchange for that agreement, Defendant would
12 agree to split the costs incurred for any such searches and make direct payment to the
13 vendor. This appears to be the most efficient compromise in light of the impending
14 trial to address the Court's concern.

15 If the third approach is adopted, Defendant would ask if the Court would share
16 the prospective juror listing by close of business Monday to allow for the vendor and
17 parties to have sufficient time to perform the searches and produce the data so as to
18 not hold up the jury selection process.

19 **RESPECTFULLY SUBMITTED** this 26th day of March, 2018.

20 **RENAUD COOK DRURY MESAROS, PA**

21 By */s/Kelly A. Hedberg*
22     Steven G. Mesaros
       Kelly A. Hedberg
23     One North Central, Suite 900
       Phoenix, Arizona 85004-4417
24     *Attorneys for Defendant American
       Zurich Insurance Company*

---

[3] Plaintiff's brief, pg. 1, line 14 ("Plaintiff has hired a company that searches 'only public data and extend[s] privacy protections …"

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March, 2018, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmitted a Notice of Electronic Filing to the following CM/ECF participants.

Honorable Douglas L. Rayes
**UNITED STATES DISTRICT COURT**
Sandra Day O'Connor
U.S. Courthouse, Suite 526
401 W. Washington Street, SPC 79
Phoenix, AZ 85003-2162

Steven C. Dawson, Esq.
Anita Rosenthal, Esq.
Sander R. Dawson, Esq.
**DAWSON & ROSENTHAL, P.C.**
25 Schnebly Hill Road
Sedona, AZ 86336-4233
*Attorneys for Plaintiff*

/s/Vicki L. Cobbs

(Page 5, CV-16-00539-PHX-DLR)   [2313-0066]

3648871.v1

LAW OFFICES
RENAUD COOK
DRURY MESAROS
ONE NORTH CENTRAL
SUITE 900
PHOENIX, AZ 85004
TELEPHONE (602) 307-9900
FACSIMILE (602) 307-5853